IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| EDWARD AMBERG, SARAH JACKLIN, JAIME BANCROFT, and RACHEL JOHNSON, | CV 24–70–BU–DLC |
| Plaintiffs, | ORDER |
| vs. | |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, and JOHN DOES 1-3, | |
| Defendants. | |

Before the Court is Defendant Travelers Casualty and Surety Company of America's ("Travelers") Motion to Dismiss Plaintiffs Edward Amberg, Sarah Jacklin, Jaime Bancroft, and Rachel Johnson's ("Plaintiffs") First Amended Complaint ("FAC") (Doc. 10). (Doc. 14.) The Court issues its Order without oral argument. For the reasons herein, the Motion will be granted and the claims dismissed.

**BACKGROUND**

As a general rule, the Court "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011) (citation omitted). The Court may, however, consider materials on which the complaint "necessarily relies" if: "(1) the

1

complaint refers to the document; (2) the document is central to the Plaintiff's claim; and (3) no party questions the authenticity of the document." *Id.* at 998. Here, the Court may consider Travelers' Insurance Policy with Granite County Hospital District d/b/a Granite County Medical Center ("GCMC") (the "Policy") (Doc. 15-1), Plaintiffs' Settlement Demand Letter transmitted to Travelers on May 1, 2023, ("Demand Letter") (Doc. 15-2), and the Parties' underlying Settlement Agreement ("Settlement Agreement") (Doc. 15-3) because these documents— which are provided by Travelers—are referenced in the FAC, central to Plaintiffs' claims, and their authenticity is not questioned by either Party. Therefore, the following facts are taken from the FAC, the Policy, the Demand Letter, and the Settlement Agreement.

On August 18, 2022, Plaintiffs, who are current and former employees of GCMC, sued GCMC and two other GCMC employees, Maria Stoppler ("Stoppler") and Yolanda Schultz ("Schultz"), for negligence and conspiracy (the "Underlying Lawsuit"). (Doc. 10 ¶ 4.) Plaintiffs alleged that Stoppler and Schultz, as well as three additional GCMC employees, Rhianon Pfeifer ("Pfeifer"), Codi Pederson ("Pederson"), and Krystal Robbins ("Robbins")[1] wrongfully harassed and retaliated against Plaintiffs for reporting patient abuse and neglect at GCMC.

---

[1] Plaintiffs refer to Stoppler, Schultz, Pfeifer, Pederson, and Robbins as "coconspirators."

(*Id.* ¶¶ 5–7.) Specifically, Plaintiffs alleged they were retaliated against, formally disciplined, and, in Jacklin's case, terminated in March and May of 2022. (*Id.* ¶¶ 8, 11, 12, 14.)

Plaintiffs subsequently filed formal grievances with GCMC's Board of Directors, who held a grievance hearing on June 3, 2022. (Doc. ¶ 9.) On June 22, 2022, following the hearing, all formal discipline against Plaintiffs was withdrawn. (*Id.* ¶ 10.) GCMC terminated Stoppler, Schultz, Pfeifer, Pederson, and Robbins in August 2022. (*Id.* ¶ 17.)

GCMC is insured by Travelers. GCMC's Policy provides a per-claim Limit of Liability of one million dollars, applicable to defense costs and settlement payments. (*Id.* ¶ 22; Doc. 15-1 at 7.) The Policy provides that Travelers had "the right and duty to defend any Claim covered by a Liability Coverage." (Doc. 15-1 at 19) (Policy, GT&C § III.E.1.). The Policy further provides that Travelers "may, with the written consent of the Insured, make such settlement or compromise of any Claim as the Company deems expedient." (*Id.* at 64) (Policy, Employment Practices Liability Coverage § IV.A.).

On April 12, 2023, GCMC requested from Plaintiffs an offer of settlement, (Doc. 10 ¶ 19) and on May 1, 2023, Plaintiffs sent Travelers a Demand Letter summarizing the allegations of the Underlying Lawsuit and their alleged damages. (Doc. 15-2.) The Demand Letter requested $75,000 for Jacklin, $200,000 for

Amberg, $100,000 for Johnson, and $175,000 for Bancroft, for a total settlement demand of $550,000. (*Id.* at 1–6.) In the interim period, Travelers defended and settled separate wrongful termination claims brought against GCMC by Stoppler, Schultz, and the other "coconspirators." (Doc. 10 ¶ 20.) On December 18, 2023, Travelers informed Plaintiffs that the one-million-dollar Policy was cannibalizing, and that the majority had been depleted to resolve the claims of the "coconspirators." (*Id.* ¶¶ 22, 27.) GCMC's counsel suggested that Plaintiffs settle their claims within the remaining Policy limit. (*Id.* ¶ 27.)

On February 16, 2024, in exchange for a full release of Travelers' insureds, Plaintiffs agreed to settle the Underlying Lawsuit for $325,000, and after payment of any defense costs, any remaining balance of the Policy's limit of liability. (Doc. 15-3 at 1, 4.) Travelers did not seek to be released as a condition of the Settlement Agreement. (*Id.* at 1.)

Shortly thereafter, on May 31, 2024, Plaintiffs initiated the present lawsuit in the Montana Third Judicial District Court for Deer Lodge County, alleging Travelers committed common law bad faith and violated Montana's Unfair Trade Practices Act ("UTPA"). (Doc. 1.) Travelers removed the action to this Court on July 30, 2024, and Plaintiffs filed the FAC on September 10, 2024 (Doc. 10). The FAC argues that Travelers committed common law bad faith, violated the UTPA

Sections 33-18-201(1), (4), (6), and (13), and impermissibly failed to interplead the Policy limits. (Doc. 10 ¶¶ 29–37.)

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts generally limit their considerations under this standard to the allegations in the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–559 (2007). Those allegations are accepted as true and viewed in a light most favorable to the plaintiff. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). This plausible pleading standard is adhered to by federal courts, as is the general rules of pleading that require a pleading to state "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). Thus, plaintiffs must include enough facts in their complaint to make it plausible, not merely possible or conceivable, that they will be able to prove facts to support their claims. *Twombly*, 550 U.S. at 555–556.

**DISCUSSION**

Plaintiffs allege a single count—"Bad Faith"—arguing that Travelers committed Common Law Bad Faith and violated the UTPA, Sections 33-18-201(1), (4), (6), and (13) when it (1) failed to interplead the Policy limits, (2) withheld pertinent Policy information, (3) engaged in preferential payments to some claimants at the expense of others, (4) failed to apprise Plaintiffs of the competing claims or that the competing claims would be resolved to Plaintiffs' detriment, (5) prioritized its insured's coconspirators' claims to the detriment of Plaintiffs, and (6) failed to fully investigate and settle claims in a prompt, fair, and equitable manner. (Doc. 10 ¶ 37.)

## I.   Insurance Bad Faith

### A. Duty to Interplead

Plaintiffs contend that when Travelers recognized it had nine claimants with nine competing claims against a single cannibalizing Policy, "it had a duty to interplead the policy limits to protect all policy claims and preserve [] fairness." (*Id.* ¶ 35.) This alleged "duty to interplead" permeates much of the FAC. Travelers argues that Plaintiffs' legal theory has no basis under Montana law. (Doc. 15 at 17.) Travelers is correct.

Montana's interpleader rule is set forth in Montana Rule of Civil Procedure 22(a) and is identical to the federal interpleader rule set forth in Federal Rule of

6

Civil Procedure 22. *Associated Dermatology & Skin Cancer Clinic v. Fitte*, 388

P.3d 632, 157 (Mont. 2016). Relevant here, Montana Rule of Civil Procedure

22(a)(2) provides that "[a] defendant exposed to [double or multiple] liability may

seek interpleader through a crossclaim or counterclaim." Montana's interpleader

rule "is an equitable remedial device that exists in order to avoid the unfairness that

may result to some claimants who have competing claims to the interpleader res,

but who lose the 'race to judgment.'" *Id.* at 637 (cleaned up).

However, as this Court recognized in *Philadelphia Ind. Ins. Co. v. Great

Falls Rescue Mission*, 548 F. Supp. 3d 995, 1005 (D. Mont. 2021), Montana

common law does not impose "a duty on an insurer to interplead available

insurance funds when there are multiple potential claimants who may or may not

eventually assert a claim." "Such a major change to Montana's law regarding an

insurer's use of interpleader actions," this Court observed, "is best left to the

legislature." *Id.* at 1005 (citing *Ogden v. Montana Power Co.*, 747 P.2d 201, 205

(Mont. 1987)).

In *Great Falls Rescue Mission*, two claimants argued that an insurer

"violated Montana law by exhausting policy limits through settlement with only

one of several injured parties instead of interpleading available insurance funds."

548 F. Supp. 3d at 997. Relying on the Montana Supreme Court's decision in *Fitte*,

claimants argued the insurer had "a common law obligation to interplead the []

Policy's limits prior to settling with [another claimant] because it was aware of several additional injured parties who may assert a claim at some hypothetical point in the future." *Id.* at 1001. In rejecting claimants' argument, this Court recognized that,

> At best, *Fitte* can be read as an endorsement of the use of interpleader actions in situations where an insurer anticipates it will be confronted with multiple competing claims for limited policy coverage. Indeed, the Montana Supreme Court repeatedly emphasized in *Fitte* that interpleader is simply an equitable tool available to insurance companies should they wish to avoid expending funds in the defense of multiple claims advanced against their insured.

*Id.* at 1002–03. This Court then determined that "it would stretch *Fitte* too far to conclude it establishes a common law duty to interplead under the circumstances of this case." *Id.* at 1003.

Plaintiffs argue that *Great Falls Rescue Mission* is distinguishable because unlike the facts at issue there, Plaintiffs had already filed suit when Travelers "prioritized payment of the policy to GCMC's coconspirators." (Doc. 18 at 10.) Though Plaintiffs are indeed correct that *Great Falls Rescue Mission* delt only with the possibility of additional claimants, the Court finds this distinction immaterial. Montana law is clear: there is simply no duty to interplead policy limits, whether there are active claims or not. Indeed, as Travelers observes (Doc. 20 at 5), if the insurer in *Great Falls Rescue Mission* had no duty to interplead the policy where it exhausted the limit with one claim, Travelers certainly had no duty to interplead

the Policy limits where all claimants, including Plaintiffs, received settlements within the Policy.

Relying on *Farinas v. Florida Farm Bureau General Ins. Co.*, 850 So. 2d 555, 561 (Fla. Dist. Ct. App. 2004), Plaintiffs further argue that, even in jurisdictions where "an insurer [may] prioritize settlements when policy limits are inadequate," the settlements must still "be reasonable in light of a full investigation and conducted in good faith." (Doc. 18 at 11.) The Court takes little stock in this argument for several reasons. First, *Farinas* delt with Florida insurance law; Montana insurance law is unique and should be treated as such. And second, the insurer in *Farinas,* like that in *Great Falls Rescue Mission*, exhausted its policy with only three of the twelve claimants. *Farinas*, 850 S.2d at 557–58. Here, as discussed, Plaintiffs received approximately 60 percent of their requested settlement.

Finally, Plaintiffs argue—without citation—that "[w]hether it was reasonable for Travelers to pay off its insured's coconspirators to the exclusion of Plaintiffs, without taking advantage of the interpleader action, is a question of fact for the jury to resolve." (Doc. 18 at 8.) Plaintiffs contend that it is a "fair question for the jury to determine whether or not that was reasonable, and whether or not that violated duties Travelers owed to Plaintiffs." (*Id.*) This argument is simply unsupported by Montana law. Though Montana law permits insurers to interplead

9

their policy limits, it does not require them to do so. Therefore, to the extent Plaintiffs' bad faith claim relies on Travelers' "duty to interplead" (*see* Doc. 10 ¶¶ 35, 36, 37), it must be dismissed.

### B. Unfair Trade Practices Act

Plaintiffs allege that Travelers violated the UTPA Sections 33-18-201(1), (4), (6), and (13). The Court will address each in turn.

### 1. Section 33-18-201(1)

Section 33-18-201(1) prohibits insurers from "misrepresent[ing] pertinent facts or insurance policy provisions relating to coverages at issue." Misrepresentation is not defined by the UTPA, but courts have understood Section 33-18-201(1) to require that an insurer "simply [] be truthful in its representations regarding the coverage provisions of an insurance policy." *Bentle v. Farmers Ins. Exch.*, 2022 WL 17787286, at *4 (D. Mont Dec. 19, 2022) (citation omitted). A Section 33-18-201(1) violation must be based on an "affirmative misrepresentation." *McColl v. Allied Prof. Ins. Co.*, 2018 WL 3999080, at *4 (D. Mont. Aug. 6, 2018). However, the statute "does not confer upon insurers a duty to disclose information in response to third-party claimants' requests for an explanation of coverage, policy limits, and amounts already expended on defense." *Bateman v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 423 Fed. Appx. 763, 765 (9th Cir. 2011).

10

Here, Plaintiffs argue that Travelers violated Section 33-18-201(1) "when it represented to Plaintiff[s] that there was one million dollars of insurance coverage while withholding the fact that the policy was cannibalizing and that it was actively attempting to settle GCMC's coconspirators['] claims behind the back of Plaintiffs." (Doc. 10 ¶ 31.) Plaintiffs contend that Travelers' representation was "misleading, unfair, and deceptive," and the insurer "intentionally concealed the fact that it had exhausted the [P]olicy in an effort to force Plaintiffs into a settlement and to damage their claims." (Doc. 18 at 16.)

The Court disagrees, and finds dismissal of this claim proper for two reasons. First, after stripping the FAC of its conclusory allegations, little remains to support a violation of Section 33-18-201(1). Indeed, the Court can identify only one well-pled allegation to support a violation of 33-18-201(1): "Travelers by and through GCMC's attorney, Jean Faure, informed Plaintiffs' counsel, for the first time, that GCMC's one million dollar insurance policy was cannibalizing and that it had been significantly exhausted by unrelated litigation." (Doc. 10 ¶ 22.) This allegation does not support a finding that Travelers withheld or intentionally concealed information from Plaintiffs. Rather, it shows the opposite: Travelers expressly *informed* Plaintiffs that the Policy was cannibalizing.

Second, a Section 33-18-201(1) violation must be founded upon an "affirmative misrepresentation." *McColl*, 2018 WL 3999080, at *4. Pertinent here,

11

"the UTPA does not confer upon insurers a duty to disclose information."
*Bateman*, 423 F. Appx. at 765. Indeed, beyond Plaintiffs' repeated assertions that
Travelers "intentionally concealed the fact that it had exhausted the policy in an
effort to force Plaintiffs into a settlement and to damage their claims," Plaintiffs
fail to allege, for example, that they requested information about the Policy or that
Travelers represented that the Policy was not, in fact, cannibalizing. Without more,
the conclusory allegation that Travelers "intentionally concealed" information is
simply not enough to survive a motion to dismiss. Therefore, Plaintiffs' claim
insofar as it alleges a violation of Section 33-18-201(1) must be dismissed.

### 2.  Section 33-18-201(4)

Section 33-18-201(4) prohibits "refus[al] to pay claims without conducting a
reasonable investigation based upon all available information." This subsection is
"designed to protect claimants against insurers who would deny a claim without
first conducting a reasonable investigation." *Lorang v. Fortis Ins. Co.*, 192 P.3d
186, 204 (Mont. 2008). The UTPA thus requires insurers to conduct a reasonable
investigation "only where they refuse to pay a claim"—"[t]he reasonableness of
the investigation does not apply where an insurer has agreed to pay benefits."
*Bentle*, 2022 WL 17787286, at *6.

Here, Plaintiffs allege that Travelers violated Section 33-18-2-1(4) "when it
denied Plaintiffs' claims and failed to reasonably investigate Plaintiffs' claims

12

prior to distributing the bulk of the policy to GCMC's coconspirators, which at the very least would include talking to Plaintiffs and reviewing the criminal justice information involving GCMC's coconspirators." (Doc. 10 ¶ 32.) Travelers argues that because it settled Plaintiffs' underlying lawsuit—and thus did not deny coverage—it could not have violated Section 33-18-201(4). (Doc. 15 at 27.) Relying on *McVey v. USAA Casualty Insurance Company*, 313 P.3d 191 (Mont. 2013) and *Lorang*, 192 P.3d 186, Plaintiffs respond that a "later payment" "fails to cure an insurer's prior failure to conduct a reasonable investigation, as required by § 33-18-201(4)." (Doc. 18 at 13) (quoting *McVey*, 313 P.3d at 195).

Plaintiffs are correct in that the Montana Supreme Court has explicitly held an insurer may not "cure" an unreasonable investigation by subsequently paying the claim after a denial or a refusal to pay. But that fact does not help them here.

In *Lorang*, insureds brought, in relevant part, a Section 33-18-201(4) claim after their insurer repeatedly denied coverage for a replacement prosthetic socket. 192 P.3d at 192–95, 203. The district court found the insurer had not violated Section 33-18-201(4) because it eventually rendered payment to its insureds. *Id.* at 195. The Montana Supreme Court reversed, reasoning that if it were to hold "that an insurer may 'cure' an unreasonable investigation by subsequently paying the claim after a denial, insurers could simply ignore the UTPA and forego reasonable investigation, or any investigation, until the claimant takes steps to enforce his or

her contractual rights[.]" *Lorang*, 192 P.3d at 216. Similarly, in *McVey*, the insurer

found the insured was majority at fault and refused to pay any sums available

under the policy. 313 P.3d at 193. However, the insurer eventually tendered

payment after it determined plaintiff was not majority at fault. Finding the insurer

had "effectively denied" coverage when it determined plaintiff to be majority at

fault, the Montana Supreme Court held the later payment was insufficient to

prevent liability under Section 33-18-201(4). *Id.* at 195.

Like *McVey*, Plaintiffs argue, Travelers "clearly and undisputably refused to

pay the claim from August 18, 2022 (the date the underlying Complaint was filed)

until the resolution of the claim in February of 2024." (Doc. 18 at 14 (citing Doc.

10 ¶ 21).) Plaintiffs explain that despite communicating the Demand Letter on May

1, 2023, the subsequent litigation "clearly demonstrates that the offer was rejected,

and there is no evidence in the Complaint that Defendant ever agreed to pay the

claim until after it had depleted a substantial portion of the policy." (*Id.* at 15.) This

is insufficient. First, for the reasons stated above, Travelers was under no

obligation to interplead the Policy limits. Second, settlement negotiations are a

routine aspect of insurance cases—unlike a finding that an insurer was majority at

fault or an outright denial, a rejection of an initial settlement demand does not, in

and of itself, indicate an insurer's refusal to pay a claim. And finally, Plaintiffs'

argument is belied by the fact that Travelers did, in fact, settle the Underlying

Lawsuit for $325,000, approximately 65 percent of Plaintiffs' initial demand. (*Id.* ¶ 28; Doc. 15-3 at 1.)

Therefore, because Travelers did not "refuse" Plaintiffs claim, Travelers had no duty to conduct a reasonable investigation, and Plaintiffs fail to plead a plausible claim for relief under Section 33-18-201(4). *See Bentle*, 2022 WL 17787286, at *3 (finding that insurer did not violate Section 33-18-201(4) because it paid plaintiff's claim).

### 3. Section 33-18-201(6)

Section 33-18-201(6) provides that an insurer may not "neglect to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear." Liability is "reasonably clear" where there is "little room for objectively reasonable debate." *Teeter v. Mid-Century Ins. Co.*, 406 P.3d 464, 468 (Mont. 2017). "In Montana, an objective standard governs such that 'liability is reasonably clear' when a reasonable person, with knowledge of the relevant facts and law, would conclude, for good reason, that the defendant is liable to the plaintiff." *Redding v. Prosight Specialty Mgmt. Co.*, 90 F. Supp. 3d 1109, 1132 (D. Mont. 2015) (citation omitted). The standard "is more demanding than the preponderance standard, and is more akin to the 'clear and convincing evidence' standard[.]" (*Id.*) (citation and internal quotation omitted). Moreover, "[a]n insurer may not be held liable under [Section 33-18-201(6)] if the insurer had

a reasonable basis in law or in fact for contesting the claim or the amount of the claim, whichever is in issue." Mont. Code. Ann. § 33-18-242(6). The "reasonable basis defense is not a question for a jury, but a matter of law for the court's determination." *Redding*, 90 F. Supp. 3d at 1132 (citation omitted).

Here, Plaintiffs claim that Travelers violated Section 33-18-201(6) when it "neglected to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear, even though it recognized early on that it had wrongfully disciplined Plaintiffs and suggested that it would like to devote resources towards a resolution." (Doc. 10 ¶ 33.) As grounds, Plaintiffs allege the following facts: (1) Travelers requested an offer, then failed to respond and attempt resolution until it had exhausted the majority of the Policy limits; and (2) during the period in which Travelers failed to effectuate settlement, it prioritized and quickly resolved claims that were brought by GCMC's coconspirators, despite the fact that these claims were made after Plaintiffs filed the Underlying Lawsuit. (*Id.*)

To begin, Plaintiffs' claim that Travelers violated Section 33-18-201(6) by failing to interplead the Policy limits must be dismissed for the reasons stated above. Furthermore, the Court agrees with Defendants that Travelers had an objectively reasonable basis to contest both liability and damages. (Doc. 15 at 29.) With respect to liability, the FAC alleges that GCMC took formal disciplinary

16

measures against Plaintiffs between March and May 2022. (Doc. 10 ¶ 4.) The FAC further alleges GCMC held a Grievance Hearing in June 2022 to address Plaintiffs' concerns of retaliatory behavior, after which it withdrew all formal disciplinary measures against Plaintiffs and, in August 2022, terminated Stoppler, Schultz, Pfeifer, Pederson, and Robbins. (Doc. 10 ¶¶ 9, 10, 15, 17.) These corrective actions provide more than an objectively reasonable basis for Travelers to contest liability.

With respect to damages, the FAC further alleges that Plaintiffs' claims were well-documented in the May 1, 2023, Demand Letter (*Id.* ¶ 19), which also included a summary of the damages incurred and a settlement request totaling $550,000. (*See* Doc. 15-2.) Yet a review of Demand Letter's explanation of these alleged damages leaves much to be desired.

Specifically, though Plaintiff Jacklin's employment was reinstated after approximately three months (*see* Doc. 10 ¶ 11), the Demand Letter seeks $75,000 for her "emotional distress, lost wages, and damage to her reputation in the local medical community," evidenced by her "fear that she would never be hired in the local community after graduation" and the fact that GCMC has yet to schedule her for a shift. (Doc. 15-2 at 2.) The Demand Letter further seeks $200,000 on behalf of Plaintiff Amberg, who pursued alternative employment in November 2022, reasoning that he "lost somewhere in the ballpark of $20,000" of lost wages and will "continue to lose wages at about $20,000 - $40,000 per year going forward."

17

(*Id.* at 2–4.) Similarly, with respect to Plaintiff Johnson, the Demand Letter seeks $100,000 because, "as a result of [GCMC's] conspiracy to silence Johnson, and its organized retaliation against her, Johnson has suffered damage including severe emotional distress." (*Id.* at 5.) Finally, the Demand Letter seeks $175,000 to compensate Plaintiff Bancroft for her "severe emotional distress," explaining that, unlike her co-Plaintiffs, Bancroft "has been unable to escape the disaster that was created by Stoppler and Schulz during their tenure and her emotional distress continues to this day." (*Id.*)

Despite providing little to no evidence of any quantifiable damages, the Demand Letter requested a total of $550,000 to settle Plaintiffs' claims. Given this apparent lack of detail regarding damages, Travelers had more than an objectively reasonable basis to contest liability. Therefore, insofar as the FAC alleges a violation of Section 33-18-201(6), it must be dismissed.

### 4. Section 33-18-201(13)

Section 33-18-201(13) prohibits "fail[ure] to promptly settle claims, if liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage." This subsection "applies to an insurer's failure to pay one type of damages for which liability has become reasonably clear in order to influence settlement of claims for other types of damages made pursuant to the same policy."

18

*Ridley v. Guar. Nat. Ins. Co.*, 951 P.2d 987, 994 (Mont. 1997) (insurer must pay undisputed coverage for medical expenses and cannot refuse such payment to force a settlement of disputed coverage for lost wages or pain and suffering).

The FAC alleges that Travelers violated Section 33-18-201(13) when it "leveraged its settlement agreement with Plaintiffs in an attempt to secure a release for itself[,]" or, "[i]n other words, Travelers attempted to leverage its settlement under the liability portion of the policy in order to secure a release under its implied obligation to act in good faith and fair dealing." (Doc. 10 ¶ 34.) Travelers argues that the FAC fails to state a plausible claim for relief under Section 33-18-201(13) because an insurer cannot leverage settlement of the liability policy to obtain settlement of the "implied obligation to act in good faith and fair dealing." (Doc. 15 at 31–32.) Travelers is correct.

As an initial matter, Travelers did not, as the FAC alleges, secure a release for itself. (*See* Doc. 15-3.) With respect to the substance of Plaintiffs' claim, the implied covenant of good faith and fair dealing is a legal obligation derived from an insurance policy's coverage; it is subsumed in, and not separate from, the individual portions of a contract. *See Phelps v. Frampton*, 170 P.3d 474, 482 (Mont. 2007) ("the covenant [of good faith and fair dealing] is a mutual promise implied in every contract that the parties will deal with each other in good faith"). Because the Policy's liability provision and Travelers' implied obligation to act in

19

good faith and fair dealing are not separate portions or provision of the contract, there can be no plausible violation of Section 33-18-201(13). *See Cranksa v. UMIA Ins., Inc.*, 709 F. Supp. 3d 1200, 1215 (D. Mont. 2024) (finding Section 33-18-201(13) "inapplicable because there [was] no evidence that more than one portion of Defendant's policies were ever at issue or that one portion of a policy was leveraged to influence another portion.").

Therefore, to the extent the FAC alleges a violation of Section 33-18-201(13), it must be dismissed.

### C. Common Law Bad Faith

Plaintiffs allege that Travelers "committed Common Law Bad Faith" when it failed to interplead the Policy's limit. (Doc. 10 ¶ 37.) Travelers asserts that Plaintiffs fail to allege a valid cause of action for common law bad faith because such actions are preempted by the UTPA. (Doc. 20 at 13.) However, the Court need not reach the issue of whether Plaintiffs' claims were preempted because where, as here, a common law cause of action is "substantively identical" to a legally deficient UTPA cause of action, the Court should dismiss the case in its entirety. *Moe v. Geico Indem. Co.*, 2021 WL 4244986, at *11 (D. Mont. Sept. 15, 2021), *adopted in full by Moe v. Geico Indem. Co.*, 2022 WL 225518, at *4 (D. Mont. Jan. 26, 2022) (reversed and remanded on other grounds).

20

### D. Dismissal with Prejudice

Leave to amend generally must be granted unless one of the following factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). The Court finds dismissal with prejudice proper for two reasons. First, Plaintiffs have previously benefited from the opportunity to amend their Complaint in response to Travelers' first motion to dismiss. (*See* Doc. 5.) And second, the defects identified in the FAC are largely that of theory and not of pleading. Because additional factual allegations are unlikely to cure these defects, further amendment would be futile.

### CONCLUSION

Accordingly, for the reasons stated above,

IT IS ORDERED that Travelers' Motion to Dismiss (Doc. 14) is GRANTED and this matter is dismissed with prejudice.

The Clerk of Court is directed to close this case.

DATED this 1st day of July, 2025.

Dana L. Christensen, District Judge
United States District Court